UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────

ROBERT DEVITO,

                             Plaintiff,

    v.                                 No. 19-CV-5099

JEFFREY NEIMAN,               JURY DEMANDED
HERMAN JACOBOWITZ a/k/a
HERMAN JACOBS, and
EXPEDITE COLLECTIONS INC.,

                             Defendants.
─────────────────────────────────

## COMPLAINT FOR CONVERISON, ABUSE OF PROCESS, AND FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, NEW YORK GENERAL BUSINESS LAW § 349, AND NEW YORK JUDICIARY LAW § 487

### Introduction

1.    This is an action for actual, statutory and punitive damages, and civil penalties brought by Plaintiff Robert DeVito against Defendants Jeffrey Neiman, ex-con Herman Jacobowitz, and Jacobowitz's debt-collection firm, Expedite Collections Inc., for the conversion of approximately $14,700 of Plaintiff's money, and for violations the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices, for violations of New York General Business Law § 349, which prohibits deceptive acts and practices, for violations of New York Judiciary Law § 487, which prohibits deceit or collusion, with intent to deceive a court or any party, and for abuse of process.

1

2.     In 2001, Chase Manhattan Bank USA NA obtained a default judgment against Plaintiff in NYC Civil Court in Staten Island for $5,421.15, based on sewer service allegedly made in 2000. In 2019, Defendants Neiman, Jacobowitz, and Expedite froze Plaintiff's bank account and sent a New York City Marshal to take the money. In the garnishment forms, Neiman lied by stating to Plaintiff's bank, TD Bank, that he was the attorney for the judgment creditor.

3.     After Defendants pocketed approximately $14,700 from Plaintiff's bank account, they tried to file a Satisfaction of Judgment. The Civil Court refused to accept the Satisfaction of Judgment, because Neiman was not the attorney of record. When Neiman tried filing his fraudulent Satisfaction of Judgment, none of the Defendants' names appear anywhere in the court file—not Neiman, not Jacobowitz, and not Expedite. On file with the Civil Court, however, was an assignment to a mysterious assignee, RFC Distributors Inc., which New York Secretary of State records reveal was dissolved by proclamation on January 26, 2011.

4.     In other words, either Chase Manhattan Bank, N.A. or the dissolved company known as RFC Distributors was the judgment creditor when Defendants took Plaintiff's money and only Gail Siegel, Esq., of Chase Bank was an attorney of record on the case. Moreover, having been formed on October 3, 2017, Expedite Collections could not have been the owner of the judgment if RFC Distributors had been dissolved six years earlier.

5.      In early 2019, Plaintiff retained counsel to file an order to show cause to vacate the judgment and get his money back. On February 25, 2019, the Court issued an order vacating the judgment and directing that all monies "be returned forthwith" to Plaintiff.

6.      Despite repeated written demands to Defendants to return the converted funds, Defendants have taken the position that because they tried to file a Satisfaction of Judgment with the Civil Court and because Plaintiff did not serve the dissolved entity known as RFC Distributors Inc. with a copy of the order to show cause, the Civil Court's order is a nullity and they get to keep the converted funds.

7.      Plaintiff believes—but cannot yet confirm—that Herman Jacobowitz may be a felon by the name of Herman Jacobowitz a/k/a Herman Jacobs a/k/a "Mshulum" Jacobowitz who was arrested in 2003, pleaded guilty, and was sentenced in 2007 to 15 years in prison for his role in a massive accounting-fraud, arson, and bribery scheme. *See* Exhibit A and Exhibit B.

8.      In March 2019, Herman Jacobowitz was released from prison under the recently enacted "First Step Act." *See New York Times* article attached as Exhibit C ("Another [releasee] is reported to be a white-collar criminal named Herman Jacobowitz, 60, who pleaded guilty in Brooklyn in 2005 in another large fraud case and was sentenced to 15 years, according to court papers and a lawyer familiar with the case. Mr. Jacobowitz could not be reached for comment.")

9.      . Jacobowitz's arrest, lengthy confinement, and recent release may explain why this default judgment based on bad service sat since 2001 without anyone trying to collect on it. In the meantime, however, the alleged holder of the judgment, RFC Distributors, had been dissolved. But this apparently did not stop Jacobowitz—and Neiman and Expedite—from trying to collect on it.

## Jurisdiction and Venue

10.     Jurisdiction of this court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

11.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

12.     This court has jurisdiction over Expedite Collections Inc. because it regularly conducts and transacts business in this state, and the conduct complained of occurred in this District.

13.     This court has jurisdiction over Herman Jacobowitz because he regularly conducts and transacts business in this state, and the conduct complained of occurred in this District.

14.     This court has jurisdiction over Jeffrey Neiman because he regularly conducts and transacts business in this state, and the conduct complained of occurred in this District.

15.     Venue is proper in this district under 28 U.S.C. §1391(b) in that the Plaintiff resides in Staten Island, Defendants do business and transact business here, and the conduct complained of occurred in Brooklyn and Staten Island.

## Parties

16.     Plaintiff, Robert DeVito, is a natural person residing in the City and State of New York, in the County of Richmond, and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

17.     Defendant Expedite Collections Inc. is a corporation organized and existing under the laws of the State of New York.

18.     Expedite Collections is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

19.     Expedite Collections has transacted business within the State of New York as is more fully set forth hereinafter in this complaint.

20.     Expedite Collections regularly attempts to collect debts alleged to be due another.

21.     Expedite Collections uses instrumentalities of interstate commerce and the mails in pursuit of its business, the principal purpose of which is the collection of debts.

22.     Expedite Collections is licensed as a debt collector by the New York City Department of Consumer Affairs.

23.     The acts of the Expedite Collections alleged hereinafter were performed by its officers, agents, and employees acting within the scope of their actual or apparent authority.

24.     All references to "Expedite Collections" herein shall mean Expedite Collections Inc. or an employee, officer, or agent of Expedite Collections Inc.

25.     Defendant Herman Jacobowitz runs Expedite Collections out of a "private mail box" in Williamsburg, which he falsely claims is an office suite. *See, e.g.*, reference to "Suite 262" in the New York Secretary of State Division of Corporations Entity Information for Expedite Collections Inc., attached as <u>Exhibit D</u>.

26.     Herman Jacobowitz is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

27.     Herman Jacobowitz has transacted business within the State of New York as is more fully set forth hereinafter in this complaint.

28.     Herman Jacobowitz regularly attempts to collect debts alleged to be due another.

29.     Herman Jacobowitz uses instrumentalities of interstate commerce and the mails in pursuit of his business, the principal purpose of which is the collection of debts.

30.     Herman Jacobowitz was personally involved in the conversion of Plaintiff's funds and Jeffrey Neiman or Herman Jacobowitz put down on the garnishment papers that Jeffrey Neiman ran his offices out of an office suite in Williamsburg, when the suite number was, in reality, nothing more than the number of a "private mail box" in a Mailboxes, Etc.-type store known as "The Que: A Communication Hub." *See* photo of "The Que" store sign, a person entering the store, and a sign on the store door, all attached as <u>Exhibit E</u>.

31.     Defendant Jeffrey Neiman is an attorney licensed to practice law in the State of New York.

32.     Neiman is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

33.     Neiman has transacted business within the State of New York as is more fully set forth hereinafter in this complaint.

34.     Neiman regularly attempts to collect debts alleged to be due another.

35.     Neiman uses instrumentalities of interstate commerce and the mails in pursuit of its business, the principal purpose of which is the collection of debts.

36.     Neiman was personally involved in the conversion of Plaintiff's moneys and Jeffrey Neiman or Herman Jacobowitz put down the on the garnishment papers that Jeffrey Neiman ran his offices out of an office suite in Williamsburg, when the suite number was, in reality, nothing more than a "private mail box" in a Mailboxes, Etc.-type store known as "The Que: A Communication Hub." *See* photo of "The Que" store sign, a person entering the store, and a sign on the store door, all attached as Exhibit E.

37.     Alternatively, Jeffrey Neiman claims to operate out of a home located at 8 Fillmore Avenue, Staten Island, New York 10314. *See* photo of the home taken from Google Street View and attached as Exhibit F.

### Factual Allegations

38.     Plaintiff had some financial setbacks in the late 1990s and believes he may have run up a debt on a Chase Manhattan Bank USA, NA credit card.

39.     This debt would have been for personal, household, or family purchases.

40.     Unbeknownst to Plaintiff, on or about July 28, 2000, Chase commenced a collection action against Plaintiff in NYC Civil Court, Richmond County. *See* Summons and Complaint attached as <u>Exhibit G</u>.

41.     On or about January 25, 2001, a default judgment was entered against Plaintiff in the amount of $5,421.15. *See* Judgment attached as <u>Exhibit H</u>.

42.     The default judgment was in the name of Chase and the attorneys of record who represented Chase were all in-house for the "Chase Manhattan Legal Department." *See* <u>Exhibits G and H</u>.

43.     The affidavit of service stated that on July 21, 2000, at 1:38 pm, the summons and complaint was served by nail-and-mail service at "445 Hoyt Avenue, Staten Island, NY 10301-1st Fl." *See* <u>Exhibit I</u>

44.     Plaintiff never received a copy of the summons and complaint.

45.     Plaintiff first learned of the lawsuit and judgment in or about November 2018, when Defendants, claiming to have the right to collect on the Chase judgment, sent a NYC Marshall to take approximately $14,700 from Plaintiff's bank account by serving an Execution with Notice to Garnishee prepared by Defendants and signed by Defendant Neiman. *See* the execution documents and notice from the marshal attached as <u>Exhibit J</u>.

46.     In the Execution with Notice to Garnishee, Defendants misrepresented to the bank, to the marshal, and to Plaintiff that Neiman was the attorney for the judgment creditor. *Id.*

47.     The Execution was the first communication that Plaintiff received from Defendants.

48.     At no time has Plaintiff received a notice of assignment of judgment from Chase or anyone else in any alleged chain of assignment.

49.     On file with the Civil Court is an Assignment of Judgment dated July 10, 2003, from Chase to "RFC Distributors Inc." but no one ever sent a copy of this Notice of Assignment to Plaintiff and Plaintiff has never heard of the alleged assignee. *See* Exhibit K.

50.     New York Secretary of State records reveal that RFC Distributors Inc. was dissolved by proclamation on January 26, 2011. *See* Exhibit L.

51.     At no time has Plaintiff received a substitution of attorney to Defendant Neiman.

52.     Nor do the Civil Court records reflect a substitution of attorney.

53.     On or about December 20, 2018, after emptying Plaintiff's bank account of approximately $14,700, Defendants tried filing a Satisfaction of Judgment, signed by Defendant Neiman, who now claimed to be the "Attorney for Judgment Debtor Expedite Collections". *See* purported Satisfaction of Judgment attached as Exhibit M.

54.     The NYC Civil Court refused to accept the Satisfaction of Judgment, stating in writing that it was not doing so because Gail Siegel, Esq. of Chase—and not Defendant Neiman—was the attorney of record. *See* Exhibit N.

55.     Plaintiff retained counsel and paid them an initial $1,500 initial retainer to bring an order to show cause to vacate the judgment and defend the case. *See* Order to Show Cause attached as Exhibit O.

56.     The order to show cause was served on the attorney of record, Gail Siegel, Esq., of Chase' Legal Department. *See* Affidavit of Service of Order to Show Cause, attached as Exhibit P.

57.     The order to show cause was granted on default and on February 25, 2019, the Civil Court entered a Decision/Order vacating the judgment and ordering that "All monies having been levied by the plaintiff in enforcing the judgment against the defendant will be returned forthwith . . . ." *See* Decision/Order attached as Exhibit Q.

58.     On or about March 6, 2019, Plaintiff's Civil Court attorneys served the Decision/Order with Notice of Entry upon the attorney of record, Gail Siegel, Esq. of Chase's Legal Department. *See* last page of Exhibit Q.

59.     On or about June 13, 2019, one of Plaintiff's state-court attorneys, Alexander Cox, Esq., spoke with Jacobowitz and requested, both orally and in writing, information from Jacobowitz about who allegedly owned Plaintiff's debt.

60.     On or about June 14, 2019, Jacobowitz responded by email as follows:

From: **Expedite Collections** <support@expeditecollections.com>
Date: Fri, Jun 14, 2019 at 10:09 AM
Subject: Re: DeVito, Robert- Index # CV-032952-00/RI
To: Alexander Cox <acox@lebedinkofmanlaw.com>

Good morning Alexander,

The name of the company is RFC Dist Inc., we don't have more information for
the company since this case is closed for over seven months already. I would
suggest reviewing the filing in court, maybe there is more information about the
company.

If you have further questions, please do not hesitate to contact our offices.

Thank You,
Herman Jacobowitz
Expedite Collections Inc.
130 Lee Avenue
Suite 262
Brooklyn NY 11211
Phone:(646) 512-9595
Fax:(646) 512-9898
www.ExpediteCollections.com

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

NOTICE: This Electronic mail message is intended exclusively for the individual or entity to which it is
addressed. This message, together with any attachment, may contain confidential and privileged
information. Any unauthorized review, use, print, retain, copy, disclosure or distribution is strictly
prohibited. If you have received this message in error, please immediately advise the sender by reply
email message to the sender and delete all copies of this message. Thank you. - Expedite Collections

61.    On or about June 17, 2019, Plaintiff sent a letter by certified mail,

return receipt requested, by regular first-class mail with a certificate of mailing,

and by email to Defendant Neiman, enclosing a copy of the Decision/Order with

Notice of Entry and demanding that Defendants immediately return the money

they had converted. *See* letter and proof of mailing and delivery, attached as

Exhibit R.

62.     On July 2, 2019, Defendant Neiman sent a letter by email to Plaintiff's Civil Court attorneys in which he refused to return the funds Defendants had converted, stating as follows:

> In response to your letter dated June 17, 2019, please be advised that the funds were garnished well before February 25, 2019 and received by our client. The hold on the TD Bank account was placed on November 13, 2018.Your client offered a settlement but it was rejected by the creditor RFC Dist. Corp. No one heard anything from you or your client until the February 25, 2019 order was received. There was no notice to either Expedite Collections, RFDC or myself That an Order To Show Cause was filed or to place the money on hold. This order postdated any judgment recovery and thus I suggest the order you received was a nullity.
>
> If you have any questions, please feel free to call me at the above number.

*See* Exhibit S.

63.     To date, neither Chase nor anyone in the alleged chain of assignment from Chase to Defendant Expedite has served a Notice of Assignment on Plaintiff – the only assignment of judgment on file purports to transfer ownership from Chase to RFC Distributors Inc., and no notice of this assignment was ever sent to Plaintiff.

64.     What relationship, if any, the dissolved corporation, RFC Distributors, Inc., has to Defendant Expedite, Defendant Jacobowitz, or Defendant Neiman remains a mystery.

65.     The address on file with the New York Secretary of State, however, reveals that RFC Distributors was run out of "private mail box" #116 at a Mailboxes, Etc.-type business, known as "hello mailbox", located at 320 Roebling

Street, in Williamsburg, mere blocks away from the private mail box that serves as the false "office suite" for all three Defendants. *See* photo of "hello mailbox" storefront attached as <u>Exhibit T</u>.

66.     To date, no Notice of Assignment has been produced or is on file with the Civil Court showing any alleged assignment of judgment from anyone to Defendant Expedite.

67.     Moreover, as a corporation dissolved in 2011, RFC Distributors, Inc. would have had no ability to assign anything to Expedite Collections, Inc., a corporation formed in 2017.

68.     To date, no substitution of counsel has been served or filed with the NYC Civil Court showing any change of attorney of record from the in-house attorneys at Chase to any other attorneys.

69.     In sum, Defendants converted approximately $14,700 of Plaintiff's money without any evidence showing that anyone other than Chase or a dissolved corporation owned the judgment they was seeking to collect, without Defendants being the judgment creditor in the Civil Court records, without anyone having sent any notice of assignment as is required by law, and without Defendant Neiman having been the attorney of record for anyone.

70.     And now that the judgment has been vacated, Defendants are still refusing to return the money.

## Count I

## Violations of the Fair Debt Collection Practices Act

71.     Plaintiff restates, realleges, and incorporates herein by reference all

foregoing paragraphs as if set forth fully in this Count.

72.     The conduct of Defendants as described in this complaint violated the

Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.*, as follows:

    i.   Defendants violated 15 U.S.C. §1692e, e(2), e(4), e(5), e(10), f, and f(1) by
unlawfully collecting on a default judgment allegedly owed to Chase or to
a dissolved corporation and not to any of Defendants, and without
Neiman being the attorney of record for anyone, and without Chase
having served notice of the alleged assignment of judgment on Plaintiff,
as is required under the CPLR, and then by refusing to return the money
despite the Civil Court having ordered them to do so forthwith; and

    ii.  Defendant Neiman violated 15 U.S.C. §§ 1692e, -e(3), and –e(10) of the
FDCPA by signing, filing and serving computer-generated garnishment
papers as an attorney, or by having Expedite and Jacobowitz sign the
papers on his behalf, but without any attorney review and thereby
abdicating all responsibility to the non-attorney collectors Expedite and
Jacobowitz and by letting Expedite and Jacobowitz run Neiman's law
office for him out of a "private mail box" masquerading as a law office –
that is, Neiman essentially rented out his law license to Expedite and to
Jacobowitz, while falsely and deceptively holding himself out to Plaintiff
as being and acting as a lawyer and being meaningfully involved in the
collection of his account, so as to collect on a judgment upon which
Defendants had no right to collect.

73.     As a result of Defendants' acts, Plaintiff Robert DeVito had

approximately $14,700 in funds converted and he became embarrassed, humiliated,

nervous, upset, anxious, and suffered from emotional distress and fear.

74.     Defendants have ratified and exacerbated these deceptive acts by

refusing to return the funds despite a court order directing that this action be taken

"forthwith."

**WHEREFORE**, Plaintiff Robert DeVito respectfully request that judgment be entered against the Defendants, jointly and severally, for:

(a) Actual damages;

(b) Statutory damages for under 15 U.S.C. § 1692k.

(c) Costs, disbursements and reasonable attorney's fees under 15 U.S.C. § 1692k.

(d) For such other and further relief as may be just and proper.

### Count II

### Violations of New York General Business Law § 349

75.   Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

76.   Under New York General Business Law ("GBL") § 349, deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

77.   Defendants' preparation and use of garnishment papers to collect on judgments they do not own and do not have the right to collect upon and for which they cannot even file satisfactions of judgment violated GBL § 349 by falsely and deceptively garnishing and converting money from consumers.

78.   Defendants have ratified and exacerbated these deceptive acts by refusing to return the funds despite a court order directing that this action be taken "forthwith."

79.    As a result of Defendants' acts, Plaintiff Robert DeVito had approximately $14,700 in funds converted and he became embarrassed, humiliated, nervous, upset, anxious, and suffered from emotional distress and fear.

80.    By and through their acts, omissions, concealments, and misrepresentations, Defendants violated GBL §§ 349 with materially misleading and consumer-oriented deceptive acts and practices, with a broad impact on consumers at large, and have done so knowingly or willfully.

81.    Defendants' garnishment and conversion of funds—and refusal to return those funds in the face of a court order—constitute egregious acts justifying the imposition of punitive damages.

82.    Plaintiff was and is suffering irreparable injury as a result of Defendants' having taken his money without any legal right to do so.

WHEREFORE, Plaintiff asks that this Court enter judgment in his favor against Defendants, awarding damages as follows:

(A) Civil penalties as provided under New York General Business Law § 349;

(B) Actual damages provided under New York General Business Law § 349;

(C) Punitive damages as provided under New York General Business Law § 349;

(D) Attorneys' fees, litigation expenses and costs incurred in bringing this action; and

(E) Any other relief this Court deems appropriate and just.

## Count III

### Abuse of Process

83.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

84.     Defendants engaged in abuse of process by intentionally garnishing and converting Plaintiff's funds without any right to do so, by falsely representing that Defendants operated an office suite out of a "private mail box," by filing a false satisfaction of judgment without anyone being attorney of record or even a party to the Civil Court action, by falsely  and by refusing to return the funds when ordered to do so "forthwith."

85.     Defendants have taken these actions with respect to Plaintiff and to other consumers who allegedly owe money.

86.     Defendants have perverted legal process by taking the actions described above of unlawfully filing these unfair, deceptive, unconscionable and unlawful garnishment actions in distant forums for the purpose of obtaining the collateral objective of unlawfully obtaining gaining an unfair and unlawful advantage by garnishing and converting funds from consumers like Plaintiff and then by refusing to return them.

87.     Plaintiff has been and is being damaged by Defendants' practices.

88.     Defendants engaged in the practices complained of for the purpose of injuring and taking advantage of consumers.

17

89.     Plaintiff was and is suffering irreparable injury as a result of Defendants' decision to garnish his funds without any right to do so on behalf of anyone.

90.     If Defendants are allowed to continue these garnishments and conversions based on judgments to which they are strangers and for which they cannot even file satisfactions of judgment, Plaintiff will lose his funds and Defendants will continue victimizing other hapless New Yorkers.

WHEREFORE, Plaintiff asks that this Court enter judgment in his favor against Defendants, awarding damages as follows:

(A) Actual damages;

(B) Nominal damages;

(C) Punitive damages;

(D) Attorneys' fees, litigation expenses and costs incurred in bringing this action; and

(E) Any other relief this Court deems appropriate and just.

## Count III

## Conversion

91.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

92.     The elements of conversion in New York State include: 1) having a possessory interest in property; and 2) having the possessory interest taken or interfered with by another in a manner that is contrary to the possessor's rights.

93.     Property subject to conversion includes, *inter alia*, readily identifiable funds garnished from a bank account.

94.     Defendants intentionally and without authority, assumed and exercised control over Plaintiff's *funds*, interfering with his right to possession of the same, by willfully refusing to comply with a court order to return the previously garnished funds forthwith.

95.     Defendants were all strangers to the judgment and to the lawsuit that resulted in the judgment, and had no more right to take funds from Plaintiff's bank account to satisfy the judgment than would a random stranger on the street.

96.     Since the only possible judgment creditors with a right to collect was Chase—and possibly RFC Distributors Inc. had it not been dissolved by proclamation eight years earlier and had chase served notice of assignment on Plaintiff—and since the only attorneys of record worked in-house for Chase, every penny taken by Defendants was illegally taken.

97.     Any amounts collected were converted from the outset regardless of whether the default judgment had been vacated.

98.     Thus, the improper garnishment by Defendants of Plaintiff's money, which harmfully interfered with Plaintiff's rights to control his own property, constituted conversion.

99.     Defendants compounded this outrageous conduct by refusing to return the funds after they were put on notice that the judgment had been vacated and told that the court had ordered the funds to be returned forthwith.

100.    For the reasons stated in the statement of facts, the conduct of Defendants is gross, wanton or deliberate and demonstrates a high degree of moral culpability. Further, said Defendants conduct as alleged in the statement of facts demonstrates malice, insult, and/or willful or reckless disregard of Plaintiff's rights, or other aggravated acts by said Defendants. For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages against Defendants Neiman, Jacobowitz, and Expedite.

WHEREFORE, Plaintiff asks that this Court enter judgment in his favor against Defendants, awarding damages as follows:

(A) Actual damages;

(B) Nominal damages;

(C) Punitive damages;

(D) Attorneys' fees, litigation expenses and costs incurred in bringing this action; and

(E) Any other relief this Court deems appropriate and just.

## Count IV

### N.Y. Judiciary Law § 487
### (as to Attorney Jeffrey Neiman)

101.    New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "willfully receives any money or allowance for or on account of any money which he

has not laid out, or becomes answerable for."

102.   As enumerated in the Statement of Facts, Attorney Jeffrey Neiman

violated Judiciary Law § 487.

WHEREFORE, Plaintiff asks that this Court enter judgment in his favor

against Defendants, awarding damages as follows:

(A)Actual damages;

(B)Treble damages;

(D) Attorneys' fees, litigation expenses and costs incurred in bringing this

action; and

(E) Any other relief this Court deems appropriate and just.

## Jury Demand

Please take notice that Plaintiff demands trial by jury in this action.

Dated: September 6, 2019

<u>/s/ Brian L. Bromberg</u>
Brian L. Bromberg
Bromberg Law Office, P.C.
*Attorneys for the Plaintiff*
26 Broadway, 27th Floor
New York, NY 10004
Tel: (212) 248-7906
Fax: (212) 248-7908
<u>brian@bromberglawoffice.com</u>