UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROBERT DEVITO,

        *Plaintiff*,

— against —

JEFFREY NEIMAN, HERMAN JACOBOWITZ *a/k/a* HERMAN JACOBS, EXPEDITE COLLECTIONS INC., RFC DISTRIBUTORS INC., BARRY KLEIN, JOHN DOES 1-10, *and* STEPHEN W. BIEGEL,

        *Defendants*.

19-CV-5099 (ARR) (RML)

OPINION & ORDER

ROSS, United States District Judge:

    Plaintiff, Robert DeVito, first filed this action on September 6, 2019, and he has since twice amended his complaint. Compl., ECF No. 1; Am. Compl., ECF No. 16; Second Am. Compl., ECF No. 68. The operative, second amended complaint asserts multiple claims against various defendants under the Fair Debt Collection Practices Act and New York state law. Second Am. Compl. ¶¶ 133–70. Defendant Stephen W. Biegel now moves to dismiss the sole claim against him—a common-law conversion claim (Count IV)—for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the instant motion. For the reasons set forth below, Biegel's motion is denied.

## BACKGROUND[1]

    In the late 1990s, plaintiff suffered "some financial setbacks," and "he may have run up a

---

[1] The following facts, drawn from plaintiff's second amended complaint, are presumed to be true for the purpose of deciding this motion. *See, e.g.*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

debt on a Chase Manhattan Bank USA, NA [("Chase")] credit card." Second Am. Compl. ¶ 68. In 2000, Chase filed a collection action, and in 2001, Chase obtained a default judgment against plaintiff in New York City civil court in the amount of $5,421.15. *Id.* ¶¶ 2, 70–71. Plaintiff alleges that he "never received a copy of the summons and complaint" in that proceeding, and that the Chase judgment was procured through "sewer service." *Id.* ¶¶ 2, 74.

Plaintiff was made aware of the Chase judgment in 2018, when defendants Jeffrey Neiman, Herman Jacobowitz, and Expedite Collections Inc. ("Expedite"), "claiming to have the right to collect on the Chase judgment, sent Defendant Biegel to take approximately $14,700 from Plaintiff's [TD Bank, N.A.] account by serving an Execution with Notice to Garnishee (the "Execution") prepared by Defendants and signed by Defendant Nieman." *Id.* ¶ 75. Plaintiff asserts that "the only possible judgment creditors with a right to collect was Chase—and possibly defendant RFC Distributors Inc.," a "now-defunct company" to which Chase may have assigned its judgment in 2003. *Id.* ¶¶ 4, 88–92, 108–09, 112, 123, 159, Ex. J. The Execution itself listed Chase as the judgment creditor, and it "misrepresented . . . that Nieman was the attorney for the judgment creditor." *Id.* ¶ 76, Ex. I at 3.

Biegel, a New York City marshal, garnished the funds from plaintiff's bank account and "transferred the money to Expedite," "even though Expedite does not appear anywhere on the judgment that was purportedly being enforced." *Id.* ¶¶ 67, 77. "Biegel did not request or receive any proof that Neiman was acting on behalf of the current creditor; that Expedite was an assignee of the judgment against Plaintiff; or that Expedite was acting as an agent for the assignee of the judgment against Plaintiff." *Id.* ¶ 78.[2]

---

[2] Plaintiff has since obtained a New York City civil court order "vacating the [Chase] judgment and directing that all monies 'be returned forthwith' to Plaintiff." Second Am. Compl. ¶¶ 5, 106, Ex. O. As of the filing of the operative complaint, none of the garnished funds have been returned

2

Based on these allegations, plaintiff brings a claim for conversion against Biegel. *Id.* ¶¶ 154–68. In short, plaintiff asserts that "Biegel had no legal right to take Plaintiff's money and transfer that money to an entity that had no relationship to the judgment that was being enforced." *Id.* ¶¶ 79, 162, ¶ 163 ("Biegel lacked the authority to garnish Plaintiff's money in the first place since he did not receive a valid Execution and he had no authority to send Plaintiff's money to Expedite, which had not provided any proof that it was an assignee of the judgment or acting as an agent for the assignee of the judgment.").

On May 17, 2021, Biegel filed a motion to dismiss. Def.'s Mot. Dismiss., ECF No. 90-5. He argues that, "where a marshal acts pursuant to a facially valid court-ordered execution, such as the Execution at issue herein, the marshal is not liable for damages arising from his/her compliance therewith." *Id.* at 3. Relatedly, he argues that, even if plaintiff's conversion claim were to otherwise have merit, Beigel would nevertheless be "entitled to immunity when performing official duties." *Id.* at 3, 6–8.

On June 1, 2021, plaintiff filed an opposition, rebutting that Biegel should be held liable because his actions "exceed[ed] the scope of authority granted by legal process." Pl.'s Opp'n 1, ECF No. 92. On June 8, 2021, Biegel filed a reply, reiterating that there was "nothing facially improper about the Execution from Expedite" and thus that "the Marshal was legally permitted to carry out its mandate by enforcing the Judgment against Plaintiff's assets." Def.'s Reply 8, ECF No. 93.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Cnty. of Erie v. Colgan Air,*

---

to plaintiff. *See id.* ¶¶ 6, 119.

*Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. I must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lundy*, 711 F.3d at 113 (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). "Threadbare recitals of the elements of cause of action, supported by mere conclusory statements," however, "do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). I am "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Plaintiff Has Stated a Claim for Conversion Against Biegel.

"Under New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 163 (E.D.N.Y. 2013) (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006)). To succeed on a claim for conversion, "a plaintiff must allege: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Id.* (citation and quotation marks omitted); *see also, e.g.*, *Giardini v. Settanni*, 70 N.Y.S.3d 57, 58 (2d Dep't 2018). "The tort of conversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another." *LoPresti v. Terwilliger*,

4

126 F.3d 34, 42 (2d Cir. 1997); *see also, e.g.*, *Coughlan v. Jachney*, 473 F. Supp. 3d 166, 201 (E.D.N.Y. 2020) (same).

In essence, the parties dispute whether Biegel's actions in garnishing approximately $14,700 from plaintiff's bank account and transferring the funds to Expedite constituted an "exercise[]" of "unauthorized dominion" over those funds sufficient to support a claim for conversion under New York law. *Alzheimer's Disease Res. Ctr., Inc.*, 981 F. Supp. 2d at 163; *see also, e.g.*, *Giardini*, 70 N.Y.S.3d at 58. Biegel argues that his "possession of the TD Bank funds . . . was expressly authorized and mandated by the Execution." Def.'s Mot. Dismiss 6. Plaintiff argues that "neither the underlying default judgment nor the notice of execution . . . authorized Biegel to convert Plaintiff's money on Expedite's behalf." Pl.'s Opp'n 1, 6 ("Nothing in the judgment or the [Execution] permitted Biegel to . . . transfer Plaintiff's money to a debt collector with no connection to the identified judgment creditor."). I agree with plaintiff that the allegations in the complaint, taken as true, describe an exercise of unauthorized dominion over the funds held in plaintiff's bank account and therefore state a claim for conversion against Biegel.

A New York City marshal, as an officer of the court, is required to execute any "mandate" that he is given "according to its command." N.Y. C.P.L.R. 2223; *see, e.g.*, *Bello v. Rockland Cnty.*, No. 19-CV-3514 (VB), 2020 WL 2319115, at *6 (S.D.N.Y. May 11, 2020), *aff'd*, 846 F. App'x 77 (2d Cir. 2021).[3] The mandate at issue here—the Execution—identified Chase as the

---

[3] Under the New York City Civil Court Act, a marshal enforcing a property execution is subject to "all provisions of law relating to the powers, duties and liabilities of sheriffs in like cases and in respect to the taking and restitution of property." N.Y. City Civ. Ct. Act § 1609. Under New York County Law, a "sheriff shall perform the duties prescribed by law as an officer of the court," N.Y. County Law § 650, including the duty "to carry out the mandates of the court," *Bello*, 2020 WL 2319115, at *6; *see also, e.g.*, *Enstrom v. City of New York*, 17 N.Y.S.2d 964, 967 (2d Dep't 1940) ("He serves the court's process and executes its mandates. He is, in effect, an arm of the court."). A "mandate" includes "a writ, process or other written direction." N.Y. Gen. Constr. Law § 28-a.

5

judgment creditor and plaintiff as the judgment debtor, and it commanded "THE SHERIFF OR MARSHAL OF THE CITY OF NEW YORK . . . to satisfy judgment out of the real and personal property of the . . . judgment debtor." Second Am. Compl. Ex. I at 3. Neither the Execution nor the Chase judgment "mention[ed] Expedite, let alone identifie[d] Expedite as the judgment creditor or an agent of the judgment creditor." Pl.'s Opp'n 5–6; *see* Second Am. Compl. ¶ 77, Ex. I at 3.

Thus, Biegel's alleged conduct—garnishing funds on behalf and at the behest of Expedite, and then transferring those funds to Expedite, ostensibly a third-party with no connection to the Chase judgment—cannot be considered to have been "authorized" or "commanded" by the Execution itself. In fact, any suggestion that Expedite was the judgment creditor would have run counter to the text of the mandate that Biegel received. And the Execution's command to "satisfy judgment" could not have been reasonably read to authorize enforcement of the Chase judgment on behalf, at the behest, and for the benefit of an entity that was not identified in the relevant legal process as the judgment creditor. Second Am. Compl. Ex. I at 3.

Biegel emphasizes that Expedite "was the entity that retained the Marshal to enforce the Judgment and provided the Marshal with a facially valid Execution commanding him to enforce the Judgment." Def.'s Reply 6. But marshals derive their authority from and "act under the direction of a court"—they "do not owe allegiance to, or take orders from . . . creditors." *Korsinsky v. Rose*, 993 N.Y.S.2d 92, 95 (2d Dep't 2014). Accordingly, the directives of even a bona fide judgment creditor cannot serve to "authorize" a marshal's conduct—a marshal must be able to trace his actions and authority back to his mandate. *See Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 533 (S.D.N.Y. 2013).

Because the legal process that Biegel received neither authorized nor commanded his alleged conduct, I conclude that plaintiff has adequately alleged that it amounted to an

6

"unauthorized dominion" over the garnished funds.

## II. Biegel Is Not Entitled to Quasi-Judicial Immunity for Acts Allegedly Outside the Scope of His Authority.

It is well established that "[j]udges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction," *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (citation and quotation marks omitted), and that "some officials who are not judges but who perform functions closely associated with the judicial process have also been accorded such immunity," *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987) (citation and quotation marks omitted). Because "New York City marshals are government officers . . . act[ing] under the direction of a court," they "may rely on the presumption of regularity that attaches to [a court] order." *Korsinsky*, 993 N.Y.S.2d at 95; *see also, e.g.*, *Maldonado v. N.Y. Cnty. Sheriff*, No. 05-CV-8377 (JGK), 2006 WL 2588911, at *5 (S.D.N.Y. Sept. 6, 2006) ("When a sheriff is presented with a mandate of the court, he is . . . justified as a ministerial officer, in obeying it according to its terms."). Accordingly, "district courts within this Circuit have held that sheriffs [and marshals] executing facially valid court orders are entitled to absolute quasi-judicial immunity." *Stancati v. Cnty. of Nassau*, No. 14-CV-2694 (JS) (ARL), 2015 WL 1529859, at *4 (E.D.N.Y. Mar. 31, 2015).

But a marshal is not "automatically entitled to immunity for all conduct he engages in while carrying out" a facially valid mandate. *Id.* Quasi-judicial immunity serves as a shield from liability only for "conduct authorized" by a facially valid mandate, as well as "any proper act done in its execution." *Id.* (emphases omitted) (quoting *Caporicci v. Nassau Cnty. Police Dep't*, No. 05-CV-5764 (LDW), 2007 WL 764535, at *7 (E.D.N.Y. Mar. 6, 2007); *Maldonado*, 2006 WL 2588911, at *5); *see also, e.g.*, *Bello*, 2020 WL 2319115, at *6; *Iovinella v. Sheriff of Schenectady Cnty.*, 413 N.Y.S.2d 497, 499 (3rd Dep't 1979). In other words, "[c]ourt officers who enforce judicial orders are not entitled to absolute immunity if they exceed the scope of the court's order or enforce

7

it in an improper manner." *Wright v. United States*, 162 F. Supp. 3d 118, 128 (E.D.N.Y. 2016); *see also, e.g.*, *Levine v. Lawrence*, No. 03-CV-1694 (DRH) (ETB), 2005 WL 1412143, at *9 (E.D.N.Y. June 15, 2005) ("[M]ost courts seem to agree that absolute quasi-judicial immunity should not extend to court officers enforcing judicial orders if . . . the court officer exceeds the scope of that order . . . or enforces it in an improper manner . . . ."). "[I]f a city marshal acts outside the scope of a court order, he 'acts at his own peril. Innocent mistake will not exculpate him, nor erroneous direction.'" *Okyere*, 961 F. Supp. 2d at 533 (quoting *Schneider v. Sachs Quality Stores, Inc.*, 197 N.Y.S.2d 894, 897 (Sup. Ct. Bronx Cnty. 1960)); *cf. Korsinsky*, 993 N.Y.S.2d at 95.

The parties appear to agree that the Execution was "facially valid." *E.g.*, Def.'s Mot. Dismiss 2–3; Pl.'s Opp'n 5, 12. They dispute, however, whether Biegel is immune from liability for his alleged conduct because he was acting as a quasi-judicial official executing a facially valid mandate. I conclude that the doctrine of quasi-judicial immunity does not provide Biegel with a dispositive defense at this stage of the litigation.

As explained above, the alleged conduct at issue here was not "conduct authorized" by Biegel's mandate. *Stancati*, 2015 WL 1529859, at *4. Nor could Biegel's actions all be said to constitute "proper act[s] done in . . . execution" of his mandate. *Id.* The legal process that was provided to Biegel identified Chase as the judgment creditor, and garnishing funds on behalf of and transferring those funds to Expedite, an entity that was not so identified, could not logically be deemed to be in service of the Execution's command to "satisfy judgment," Pl.'s Opp'n 5–6; *see* Second Am. Compl. ¶ 77, Ex. I at 3.[4]

---

[4] Indeed, where a marshal levies upon a judgment debtor's property and transfers said property to an entity that—according to the very mandate commanding the marshal to act—is not the judgment creditor, his actions may well make it harder to ultimately satisfy the judgment, depleting the judgment debtor's resources and giving rise to needless litigation.

Thus, Biegel was "operating in complete judicial silence, *without* a directive from any court," when he followed directives from Expedite that did not appear on the face of the Execution. *Dudek v. Nassau Cnty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 415 (E.D.N.Y. 2013). "At that point, [he] stopped performing a judicial function with the scope of the [Execution], for which [he] would be absolutely immune . . . ." *Id.* Rather, Biegel "stepped outside of the authority granted to [him] under the [Execution]," *Stancati*, 2015 WL 1529859, at *5, and in so doing, he "act[ed] at his own peril," *Okyere*, 961 F. Supp. 2d at 533. The allegedly "erroneous direction" of his co-defendants "will not exculpate" Biegel from exceeding the scope of his authority. *Id.*

A ruling that a marshal can be held liable for such unauthorized or improper conduct would not, as Biegel suggests, unduly "deter[] performance of important civic functions." Def.'s Reply 5 (quoting *Teddy's Drive In, Inc. v. Cohen*, 47 N.Y.2d 79, 82 (1979)). So long as a marshal faithfully follows a facially valid mandate "according to its command," N.Y. C.P.L.R. 2223, quasi-judicial immunity continues to protect him, *see, e.g.*, *Stancati*, 2015 WL 1529859, at *4. A contrary ruling, however, would allow the command of a private party to stand in as a substitute for the command of a court, even though it is axiomatic that a marshal derives his authority to act from the latter, not the former. *See, e.g.*, N.Y. County Law § 650; N.Y. City Civ. Ct. Act § 1609; *Bello*, 2020 WL 2319115, at *6; *Korsinsky*, 993 N.Y.S.2d at 95; *Enstrom*, 17 N.Y.S.2d at 967.

Because I conclude that plaintiff has stated a claim for conversion against Biegel and that quasi-judicial immunity does not insulate Biegel from liability for his alleged conduct, I deny Biegel's motion to dismiss for failure to state a claim.

## CONCLUSION

For the reasons set forth above, Biegel's motion to dismiss is denied.

9

SO ORDERED.

Dated: July 9, 2021 _____/s/_____
      Brooklyn, NY Allyne R. Ross
United States District Judge